NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—May, 1884.

TROUP v. REID.

*In the matter of the probate of the will of* RICHARD G.
RADWAY, *deceased.*

Authorities upon the question of the sufficiency of a decedent's assent to
　the words of another, uttered in his presence, as a compliance with
　R. S., part 2, ch. 6, tit. 1, § 40, requiring a testator to acknowledge
　his will and to request witnesses to subscribe the same—collated.
Decedent died at his residence in New York city, February 13th, 1884,
　after several weeks' illness from pneumonia. On the morning of
　that day, his physician P., apprehending that dissolution was immi-
　nent, conferred with him on the question of making a will, where-
　upon he expressed a wish that one should be prepared. P. drew a
　will which he read to decedent and of which the latter approved ;
　and suggested its immediate execution, to which decedent assented.
　Two attendants, F. and A., were summoned as subscribing witnesses.
　P.'s testimony as to subsequent transactions showed due execution,
　P. acting as the mouthpiece of decedent. F. and A. united in testify-
　ing that decedent said nothing whatever in their presence, and in no
　manner intimated, otherwise than by silent acquiescence, his wish
　that the paper should be executed, or his knowledge of its character.
　There was no evidence of undue influence or mental impairment.
　The subscribing witnesses were ignorant of the legal requisites of
　publication, one supposing that the transaction was unimportant,
　owing to the absence of a lawyer.—
*Held,* that P.'s testimony should be credited where conflicting with or
　unsupported by that of F. and A.; that his acts and declarations in

the presence of decedent must be treated as those of the latter ; and that the instrument should be admitted to probate.\*

APPLICATION for the probate of decedent's will, made by William D. Reid and another, executor and executrix therein named ; opposed in behalf of Adele R. Troup and another, infant daughters of decedent's deceased daughter, and his only next of kin. The facts appear sufficiently in the opinion.

ROSCOE CONKLING, PHILIP V. R. VAN WYCK, and CHAS. N. BLACK, for proponents.

COUDERT BROTHERS, for contestants.

CHARLES COUDERT, special guardian.

THE SURROGATE.—This decedent died on the 13th of February last, leaving as his sole next of kin two grandchildren, both under the age of fourteen years— children of his deceased daughter. A paper purporting

---

\* Compare the recent English case of Wright v. Sanderson (Ct. App., Prob. and Adm. Div., Feb. 1884; 32 Week. Rep., 560), where a codicil was sustained, although the subscribing witnesses swore that they never saw the testator sign his name, and that to the best of their recollection when they signed their names there was no signature in the place where the testator's signature now appeared. It was clearly shown, however, that the testator intended the instrument to be his will, and to be effectual as such; that he knew that his signature was important, and that he summoned the witnesses to his room to attest it. The court held that, under these circumstances, and taking into consideration the intrinsic improbability that an intelligent testator should have carried his own pen with him into a room where he must have known there were other pens, coupled with the admitted embarrassment of the witnesses (who were servants) at being called upon to attempt to write in his presence, the will must be deemed sufficiently proved, contrary to their recollection. The principal opinion, which was delivered by Lord SELBORNE, gives great stress to the probabilities of execution where it appears that the testator was an intelligent man of business (citing Lloyd v. Roberts, 12 Moo., 158; Blake v. Knight, 3 Curt., 547; Cooper v. Bockett, id., 648, and 4 Moo., 419; Leech v. Bates, 6 Notes of Cases, 704; Burgoyne v. Showler, 1 Rob., 12. See New York Daily Register, June 20th, 1884.

to be his will was lately propounded with the Surrogate. Its admission to probate was resisted by the special guardian of the next of kin. He attacked by his objections the mental capacity of the decedent, charged that the instrument purporting to be his will was not duly executed as such, and declared that its making and its execution were brought about by such influence as the law condemns. Those objections were subsequently withdrawn by the special guardian, but the order permitting the withdrawal gave him leave to cross-examine such witnesses as the proponent might produce before the Surrogate.

The testimony of three witnesses is now before me, and I am asked to determine thereon whether the instrument in question is shown to have been executed in substantial compliance with the requirements of law. The circumstances immediately surrounding its preparation and execution were recited at the trial by the two subscribing witnesses, and also by Dr. Alfred T. Purdy, a physician who attended Mr. Radway in his last illness. These witnesses agreed in declaring that they saw the decedent sign the paper in question, but they widely differed as to what took place by way of request and publication. Dr. Purdy's testimony is substantially as follows :

Mr. Radway, several weeks before his death, suffered from pneumonia, and lay ill at his residence in this city. Dr. Purdy, who was his attending physician, discovered, on the morning of February 13th, certain symptoms which indicated that his patient must soon die. He at once communicated this fact to Mr. Radway's sister, an unmarried lady, between forty and forty-five

years of age, and to Mr. William E. Troup, the father of the two children who, as already stated, are decedent's only next of kin.   The decedent himself, Miss Radway, Mr. Troup and these children had long constituted one family, whose intimate acquaintance Dr. Purdy had for years enjoyed.   With a view of ascertaining whether, in the opinion of those most interested, it was advisable to call the dying man's attention to the question whether he had made or desired to make testamentary disposition of his estate, Dr. Purdy conferred with Miss Radway and Mr. Troup, and was, as he understood, encouraged by them to confer with the decedent himself. This he proceeded to do, and, as a result, Mr. Radway expressed a wish that his attorney, Mr. Van Wyck, should be summoned to prepare a will.   Mr. Troup dispatched a messenger for that gentleman.   While his arrival was awaited, Dr. Purdy, observing that his patient had an "anxious" and "worried" look, inquired its cause.   Mr. Radway replied that he was sorry he had made no will and no provision for his sister's benefit.   Dr. Purdy then volunteered to prepare written memoranda of such matters as Mr. Radway might wish incorporated into a will, and thus to facilitate, to some extent, the after-labors of Mr. Van Wyck. To this suggestion the decedent assented, and the doctor thereupon proceeded to write from his dictation. When he had finished, he at once transcribed the contents of his memorandum to another paper, which is the one here propounded for probate.   This he carefully read to Mr. Radway, who declared his approval of it, saying it was just what he wished.

Dr. Purdy then proposed that, in view of Mr. Van

Wyck's failure to appear, it might be well to execute the paper at once. The decedent said: "Very well; do so." Two persons were then summoned into the sick room, Frank McNamarra, Mr. Radway's nurse, and Alice Nolan, nurse of the Troup children.

As to what happened thereafter, the evidence is very conflicting. Dr. Purdy says that he told the two servants to come to the chair in which decedent was sitting, and that when they had done so he said to them, in Mr. Radway's presence and hearing, "Mr. Radway is to make his will, and he wishes you as witnesses to it;" that Mr. Radway "assented to that—said it was so," and proceeded to sign the paper now in dispute. Dr. Purdy also testified that, in the presence of the attesting witnesses, he asked the decedent whether he acknowledged that paper to be his will, and that the decedent said he did.

If, in spite of the opposing testimony of other witnesses, that of Dr. Purdy is to be taken as strictly accurate, there can be no doubt that the instrument propounded has been satisfactorily proved.

It was held in Rutherford v. Rutherford (*1 Den., 33*— 1845) that, in a probate controversy before a jury, it was a question for such jury to determine whether, within the meaning of the statute, a "request" had been made by a testator when, having caused persons to be summoned to attend the execution of his will, he had silently acquiesced in their acting as witnesses at the request of another.

So also in Doe v. Roe (*2 Barb., 200*—1845), where the subscribing witnesses were told in the decedent's presence, but not by himself, that they had been called

to witness his will, the "request" was deemed suf-ficient.

In Brown v. DeSelding (*4 Sandf.*, *10*—1850), the court said: "The request may be implied as well as expressed. If they (the witnesses) are sent for by his (decedent's) attendants in his presence and without objection—if upon their introduction he sets himself to the execution of the will, and delivers it when executed to the witnesses, in order that they may sign it, and they do sign it in his presence, he thereby adopts the acts of his friends, and makes their request his request, within the spirit and meaning of the statute."

Torry v. Bowen (*15 Barb.*, *304*—1853), is also in point. I quote from that decision: "Nor is it necessary that the testator should make every declaration and do every act himself. If others speak and act for him in his presence, and with his assent, in such a manner that the court can see that the testator sanctioned or adopted such acts and declarations as his own, that is enough, provided they come up fully to the requisitions of the statute."

The language of the Court of Appeals, in Trustees of Auburn Seminary v. Calhoun (*25 N. Y.*, *422*—1862) is very pertinent to the facts of this case. "Take then," says the court, "the whole transactions of the day when the will was executed, and consider them as a whole, and can there be any doubt that D." (the decedent) "intended that S." (one of the subscribing witnesses) "was to see that the will was duly executed; and, whether he distinctly heard every word that S. said to the other witness or not, he knew what was going on, and heard enough to keep him fully aware of

what S. was doing, and the substance of what he was saying. . . . We consider the execution of the will fully proved. By adopting such a course in regard to the execution of this, or any will, we incur no danger of failing to carry out the purpose of the statute. . . . . . It is, of course, too late to claim that the facts making due execution must, all or any of them, be established by the concurring testimony of the two subscribing witnesses. Both of those witnesses must be examined, but the will may be established even in direct opposition to the testimony of both of them. This is too well settled to call for the citation of authorities.''

The Supreme court, in the Matter of Gilman (*38 Barb.*, *364*—1862), fully sustained the doctrine that, under certain circumstances, a declaration and request made by another person in a testator's presence would have the same effect as if made by himself.

In Gamble v. Gamble (*39 Barb.*, *373*—1863), an instrument whose validity as a will was the subject of dispute was executed without any person's, by spoken words, requesting its subscribing witnesses to act as such. The attendance of those witnesses was procured at the decedent's request. Upon their arrival, they took seats at the same table where he himself was seated. He then signed his name to the paper, and each of the witnesses, with his tacit acquiescence, signed also. The instrument was upheld as a will.

The doctrine of the cases above cited is supported by Peck v. Cary (*27 N. Y.*, *9*—1863) and by Gilbert v. Knox (*52 N. Y.*, *125*—1873). In Gilbert v. Knox, one of the subscribing witnesses undertook to superintend the

execution of a will.  He announced on behalf of the
testator, who was himself silent, that the testator de-
clared the paper then and there executed to be his will,
and wished the persons who had been selected as attest-
ing witnesses to act as such.  This was held to be a
sufficient request and publication.  Said the learned
Judge, who pronounced the opinion of the court : "Be-
fore a will can be admitted to probate, it must appear
affirmatively that the statute has been complied with,
but a substantial compliance is sufficient.  And although
the statute declares that the witnesses must sign at the
request of the testator, and that he must subscribe the
will or acknowledge the subscription in their presence,
the words of request or acknowledgement may proceed
from another, and will be regarded as those of the tes-
tator, where the circumstances show that he adopted
them, and that the party using them in his presence
was acting for him with his consent.  .  .  .  .  .  The
fact that the instrument in question was the will of the
testator was made known to all the parties by the pub-
lic declaration of Colin, who had charge of its execution,
and who assumed to act and to speak for the testator.
This agency was consistent with his relation to the tes-
tator and the will.  The testator made no dissent."

In Heath v. Cole (*15 Hun, 100*—1878), the Supreme
court justly discriminated between the case of a testator
whose mental and bodily condition are such as to fairly
raise a presumption that, by not protesting, he acqui-
esces in what is said and done in his behalf by others
in his presence, and the case of a testator greatly
enfeebled and possibly failing to indicate his dissent
because of sheer inability or indifference.  "When a

man is in full health and strength," says the court, "whatever is said for him and in his presence may properly and without danger be taken to be his act. The declaration that the instrument is the testator's will, and the request to witnesses to sign, may be made by another person, under such circumstances that they are plainly adopted by the testator and become his acts. But when a man is feeble and able to speak but faintly, at the very last of a sickness which has lasted eleven years, and within a few hours of his death, then it is necessary to examine more carefully what takes place before him. It will not answer, then, to assume, without some clear proof, that he adopts the acts of those about him, who pretend to speak for him in his feeble condition."

In the case last cited, there was grave reason to doubt the testator's knowledge of the contents of his alleged will, and grave reason to suspect that he had been swayed by undue influence.

Heath v. Cole was followed in Burke v. Nolan (*1 Demarest, 436*–1882). There the evidence failed to show the testator's knowledge of the fact that the subscribing witnesses were present for the purpose of assisting in the execution of his will. It appeared also that the words which were sought to be upheld as constituting the request and publication, and which were uttered by another than the testator, were not heard by one of the witnesses, and indeed, that he was so far away as to be unable to hear them. "It may well be," said the Surrogate, "that if he" (such witness) "was in such a position that he *could* and *ought* to have heard what was said, the remarks should be regarded as having been

made within his hearing. . . . but there is no such proof, and his positive statement that he could not hear. . . . is substantially uncontradicted."

In the case at bar, McNamarra testified that he became a subscribing witness solely at the request of Dr. Purdy, who said nothing except "come and sign this paper," addressing those words to himself and to Alice Nolan. If McNamarra's statement is to be accepted, he did not understand that the paper so signed by him was Dr. Radway's will, but deemed it a mere memorandum or draft of such an instrument. Indeed he seems to have believed that, in order to give validity to a testamentary paper, it was essential that a lawyer should participate in its drafting and execution. His fellow witness, Alice Nolan, testified that, just after her coming into the sick room, Dr. Purdy said, in a tone loud enough for Mr. Radway to hear, "Alice, I want you as a witness, you and Frank, to Mr. Radway's will."

These subscribing witnesses united in asserting that the decedent himself said nothing from the time of their entering the room until they retired from it, and that he in no manner expressed or intimated, otherwise than by silent acquiescence in what was said and done in his presence, his wish that the paper should be executed, or his knowledge of its testamentary character. I am disposed, in reviewing the evidence as a whole, to credit the testimony of Dr. Purdy wherever it conflicts with that of the subscribing witnesses. He certainly must be conceded to have much greater intelligence than they, in respect to such a matter as is involved in the present contention. He drafted the paper with his own hand, and took upon himself the superintendence of its execu-

tion. It was likely, therefore, that he would attend with some particularity to all that happened, and he says that he did.

Without attributing any unworthy motives to either of the subscribing witnesses, their failure to confirm some of his testimony may fairly be ascribed to want of attention or imperfection of memory. Both declared themselves ignorant of the requirements of law respecting the execution of wills, and of the fact that it was important for them to observe what took place with a view of giving testimony in the Surrogate's court. The nurse maid was confessedly nervous and excited, and McNamarra seems to have deemed the transaction unimportant in view of the fact that no lawyer was present to take part in it.

I should be inclined to scrutinize Dr. Purdy's testimony more closely if there were good grounds for believing that, at the time this paper was executed, he unduly influenced the decedent in respect to its provisions, or for believing that the mental powers of the decedent had become seriously impaired. But such is not shown to be the case, and is not claimed to be the case by the special guardian.

I am satisfied that the decedent dictated the terms of the disputed papers ; that it was with his knowledge and approval that the subscribing witnesses participated in its execution ; that the acts and declarations of Dr. Purdy in relation to it must be treated as if they were the decedent's own, and that a decree should be entered admitting it to probate as his last will and testament.